AF Approval _K.A. for S.N._          Chief Approval _A.S. for D.K._

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                    CASE NO.

ASHLEY HOOBLER PARRIS

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by and through the Fraud Section of the Criminal Division of the United States Department of Justice and Maria Chapa Lopez, United States Attorney for the Middle District of Florida (hereinafter referred to as the "United States" or the "government"), and the defendant, ASHLEY HOOBLER PARRIS (hereinafter referred to as the "defendant"), and the attorney for the defendant, Adam Allen, Esq., mutually agree as follows:

**A.** **Particularized Terms**

    1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with Conspiracy, in violation of 18 U.S.C. § 1349.

Defendant's Initials _AP_

2.      Maximum Penalties

Count One carries a statutory maximum term of imprisonment of 10 years; a fine of not more than $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than three years; and a special assessment of $100 per felony count.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.      Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The essential elements of a violation of 18 U.S.C. § 1347, health care fraud, are:

First:      the defendant knowingly executed, or attempted to execute, a scheme or artifice to defraud a health care benefit program by means of false or fraudulent pretenses, representations or promises;

Second:   the health care benefit program affected interstate commerce;

Third:      the false and fraudulent pretenses, representations, or promises related to a material fact;



Fourth:     the defendant acted willfully and intended to defraud; and

Fifth:      the defendant did so in connection with the delivery of or payment for health care benefits, items, or services.

The defendant can be found guilty of a conspiracy to commit the offense described herein only if both of the following elements are met:

First:      two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit health care fraud, as charged in the indictment; and

Second:     the Defendant knew the unlawful purpose of the plan and willfully joined in it.

4.     <u>Exclusion from Federal Health Care Programs</u>

The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs.  The defendant agrees to complete and execute all necessary documents provided by and department or agency of the federal government, including but not limited to the United States Department of Health and Human Services to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.



5.      <u>No Further Charges</u>

If the Court accepts this plea agreement, the Fraud Section of the United States Department of Justice and the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the Fraud Section of the Department of Justice and the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.      <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to Medicare.

7.      <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant



will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Adjusted Offense Level - Estimate Only

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States, based on the information now available to it, estimates that the defendant's adjusted offense level is 21, as determined below:

| Guideline | Description | Levels |
|---|---|---|
| 2B1.1(a)(2) | Base Offense | Level 6 |
| 2B1.1(b)(1) | Specific Offense Characteristic | Level 16 |
| 2B1.1(b)(7) | Health Care Offense Over $1,000,000 | Level 2 |
| 3E1.1 | Acceptance of Responsibility | Level -3 |
| Total Adjusted Offense Level | | Level 21 |

The defendant understands that this estimate is not binding on the court or the United States, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a



two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the Fraud Section of the Department of Justice and the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted,

6



the United States will recommend to the Court that the defendant receive a

sentence at the low end of the applicable guideline range, as calculated by the

Court.  The defendant understands that this recommendation or request is not

binding on the Court, and if not accepted by the Court, the defendant will not

be allowed to withdraw from the plea.

11.   <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the

investigation and prosecution of other persons, and to testify, subject to a

prosecution for perjury or making a false statement, fully and truthfully before

any federal court proceeding or federal grand jury in connection with the

charges in this case and other matters, such cooperation to further include a

full and complete disclosure of all relevant information, including production

of any and all books, papers, documents, and other objects in defendant's

possession or control, and to be reasonably available for interviews which the

United States may require.  If the cooperation is completed prior to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the Fraud

Section of the Department of Justice and the United States Attorney for the

Middle District of Florida, warranting the filing of a motion at the time of

sentencing recommending (1) a downward departure from the applicable



guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the Fraud Section of the Department of Justice and the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

12.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

13.   <u>Cooperation - Responsibilities of Parties</u>

a.      The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.      It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)      The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)      The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and



may either seek reinstatement of or refile such charges and prosecute the

defendant thereon in the event such charges have been dismissed pursuant to

this agreement.  With regard to such charges, if any, which have been

dismissed, the defendant, being fully aware of the nature of all such charges

now pending in the instant case, and being further aware of defendant's rights,

as to all felony charges pending in such cases (those offenses punishable by

imprisonment for a term of over one year), to not be held to answer to said

felony charges unless on a presentment or indictment of a grand jury, and

further being aware that all such felony charges in the instant case have

heretofore properly been returned by the indictment of a grand jury, does

hereby agree to reinstatement of such charges by rescission of any order

dismissing them or, alternatively, does hereby waive, in open court,

prosecution by indictment and consents that the United States may proceed by

information instead of by indictment with regard to any felony charges which

may be dismissed in the instant case, pursuant to this plea agreement, and the

defendant further agrees to waive the statute of limitations and any speedy

trial claims on such charges.

(3)     The United States may prosecute the defendant for

any offenses set forth herein, if any, the prosecution of which in accordance

with this agreement, the United States agrees to forego, and the defendant



agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The Defendant waives any protections afforded by Section 1B1.8(a) of the Sentencing Guidelines, Rule 11 of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, and the Government will be free to use against the Defendant, directly and indirectly, in any criminal or civil proceeding any of the information, statements, and materials provided by him pursuant to this Agreement, including offering into evidence or otherwise using the attached Agreed Factual Basis for Guilty Plea.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

14.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7), whether in the possession or

control of the United States, the defendant or defendant's nominees.  The

assets to be forfeited specifically include, but are not limited to, the $100,084

in proceeds the defendant admits she obtained, as the result of the commission

of the offense to which the defendant is pleading guilty.  The defendant

acknowledges and agrees that:  (1) the defendant obtained this amount as a

result of the commission of the offense, and (2) as a result of the acts and

omissions of the defendant, the proceeds have been transferred to third parties

and cannot be located by the United States upon the exercise of due diligence.

Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the

United States is entitled to forfeit any other property of the defendant

(substitute assets), up to the amount of proceeds the defendant obtained, as the

result of the offense of conviction.  The defendant further consents to, and

agrees not to oppose, any motion for substitute assets filed by the United

States up to the amount of proceeds obtained from commission of the offense

and consents to the entry of the forfeiture order into the Treasury Offset

Program.  The defendant agrees that forfeiture of substitute assets as

authorized herein shall not be deemed an alteration of the defendant's

sentence.

The defendant additionally agrees that since the criminal

proceeds have been transferred to third parties and cannot be located by the

12



United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the

13



defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to,



the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.



B.    **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant=s restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.

16



The defendant understands that this agreement imposes no limitation as to fine.

2.  <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.  <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any



misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information



concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

> 6.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make



with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida, as well as the Fraud Section, Criminal Division of the United States Department of

20



Justice, and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.     Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.     Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the

21

right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

22



FACTS

Between approximately September 2018 and March 2020, in the Middle District of Florida and elsewhere, Ashley Hoobler Parris ("HOOBLER") knowingly and willfully conspired to commit health care fraud with others including Cooperator #1, a resident of Hillsborough County. Cooperator #1, known to HOOBLER and the United States, has been charged in the District of New Jersey and is presently cooperating with the United States.

HOOBLER and her co-conspirators would obtain completed cancer genetic testing ("CGX") tests. The tests were procured by paying kickbacks to marketers who would obtain personal medical information and completed CGX tests from Medicare beneficiaries. Once HOOBLER and her co-conspirators had obtained a completed CGX test, they would pay a kickback to telemedicine providers in order to obtain doctor's orders ("D.O.'s") authorizing the CGX tests. The D.O.'s were authorized by medical professionals that were not treating the Medicare beneficiaries as required by Medicare.

After obtaining a completed CGX test and a D.O. authorizing the test, HOOBLER and her co-conspirators would then send the completed CGX tests and D.O.'s to medical laboratories that would conduct CGX tests. These



tests were not eligible for reimbursement by Medicare.  Nonetheless, the laboratories would bill Medicare for CGX tests that were not eligible for reimbursement by Medicare.  Further, the laboratories would pay HOOBLER and her co-conspirators a kickback payment in exchange for the submission of the completed CGX test kits and the D.O.'s.

Through her actions, HOOBLER willfully, and with intent to defraud, conspired with Cooperator #1 and others to submit CGX tests that were not medically necessary nor eligible for reimbursement by Medicare.  Through the payment of illegal kickbacks and bribes, HOOBLER and her co-conspirators defrauded Medicare, a health care benefit program affecting inter-state commerce, via material fraudulent pretenses and representations, namely, that the submitted CGX tests were eligible for reimbursement and ordered by a treating physician.

In an effort to obtain payment from one of the laboratories that she sent completed CGX kits and D.O.s to, HOOBLER prepared and sent fraudulent invoices to a government cooperator.  HOOBLER sent the fraudulent invoices with the purpose of hiding and concealing the purpose of the conspiracy in case of an audit.

HOOBLER also conspired with others to send Respiratory Pathogen Panel ("RPP") tests and COVID-19 tests that were not eligible for

24



reimbursement by Medicare to medical laboratories in exchange for illegal kickbacks and bribes. The RPP test did not and could not test for COVID-19. Medicare reimbursement rates for the RPP test were approximately four times higher than Medicare reimbursement rates for the COVID-19 test. HOOBLER was captured on recorded calls discussing schemes through which she and her co-conspirators would receive kickbacks in exchange for providing beneficiary information and completed RPP tests and COVID-19 tests to laboratory owners and operators, who in turn would submit claims for reimbursement to Medicare.

Specifically, on a recorded call that occurred on or about March 18, 2020, HOOBLER told Cooperator #1 that she was working with a lab that would pay a $100 kickback for every COVID-19 test submitted. During the call, HOOBLER explained that the lab she was speaking to would pay the $100 kickback if the "marketer" would provide the lab with a completed COVID-19 test and a completed RPP test for each Medicare beneficiary that was referred. As the call progressed, Cooperator #1 stated, "... the $100 is because you will be able to make it up on the RPP... you are going to be able to sell it because everyone wants the Corona test done ..." HOOBLER responded, "exactly." In other words, the laboratory would pay a $100



kickback per Medicare beneficiary in exchange for the submission of completed RPP test and COVID-19 test.

On a recorded call that occurred on or about March 23, 2020, HOOBLER told Cooperator #1 that she was in contact with more than one laboratory. HOOBLER explained that there was some difficulty in finding the swabs needed to conduct the COVID-19 test. HOOBLER further explained that one of the laboratories that she was in contact with ("Lab #1") was interested in paying a $125 kickback for each submission of a COVID-19 test that was combined with an RPP test.

On a recorded call that occurred on or about March 25, 2020, HOOBLER told Cooperator #1 that multiple labs that she was speaking with were interested in proceeding with receiving COVID-19 tests combined with RPP tests.

On a recorded call that occurred on or about March 26, 2020, HOOBLER told Cooperator #1 that another lab that she was in communication with ("Lab #2") could not bill for the COVID-19 test and the RPP test at the same time because "they" put a stop to it "because they know what people are doing." HOOBLER added that Lab #2 actually was affiliated with multiple labs, and would look into whether they could split the COVID-19 test and the RPP test for the same patient across more than one laboratory.

26



The purpose of splitting the RPP test and the COVID-19 test across more than one laboratory would be to disguise that both tests are being performed at the same time.

On or about March 30, 2020, HOOBLER and Cooperator #1 discussed the COVID-19 scheme on the phone. This time, HOOBLER informed Cooperator #1 that Lab #2 was only interested in proceeding with the RPP test and did not want to pay for COVID-19 tests. HOOBLER added that Lab #2 could pay out a $150 kickback in exchange for each RPP sample submitted to the lab. During the call, HOOBLER also discussed submitting COVID-19 tests and RPP tests to Lab #1, which was still interested in receiving both tests in exchange for kickbacks. HOOBLER confirmed that Lab #1 was still interested in bundling the COVID-19 test with the RPP test.

Through her actions, HOOBLER willfully, and with intent to defraud, conspired with others to attempt to submit COVID-19 and RPP tests that were not medically necessary nor eligible for reimbursement to Medicare, a health care program affecting inter-state commerce. The attempted false and fraudulent representations related to material fact, namely, that the tests were medically necessary and eligible for reimbursement by Medicare.

As a result of HOOBLER's participation in the illegal scheme, Medicare was billed approximately $3,022,032.04 for cancer genetic testing.



HOOBLER personally obtained approximately $100,084 from the illegal scheme.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me.  It does not include all of the facts known to me concerning criminal activity in which I and others engaged.  I make this statement knowingly and voluntarily and because I am in fact guilty of the crime charged.

12.     Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___3/___ day of October, 2020.

MARIA CHAPA LOPEZ
United States Attorney
Middle District of Florida


ASHLEY HOOBLER PARRIS
Defendant

Alejandro J. Salicrup
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice


Adam Allen
Attorney for Defendant

Daniel Kahn
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice